STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-568
RAC-CuM-11/8/2013

HENRYKA ZWOLINSKI and ANIA
ZWOLINSKI as legal guardians
for JOANNA ZWOLINSKI,
        Plaintiffs

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

v.

BENJAMIN SEALE, JOHANNA SEALE,
ALYSE ALLEN, ELIZA JENKS,
JOSEPH SEALE, MERRILL SEALE, and
MAGNESENSE, LLC,
        Defendants

STATE OF MAINE
Cumberland, ss.
RECEIVED

Before the court is the Defendants' Motion for Summary Judgment on Plaintiffs' four-count Amended Complaint, which alleges negligence as well as an intentional tort. The Plaintiffs' claims rest upon the premise that Joanna Zwolinski was poisoned by one or more of the Defendants. Joanna suffers from debilitating health problems, which originated when she was 14, and which she attributes to the alleged poisoning.

The Defendants have stated that the Plaintiffs cannot prove that any one of the Defendants negligently or intentionally poisoned Joanna, and thereby the Plaintiffs cannot show either a breach of duty under a negligence theory or an intentional tort. Defendants also contend that the Plaintiffs cannot establish a prima facie case of proximate causation. As a result, Defendants argue that they are entitled to summary judgment in their favor.

The Plaintiffs replied to the Motion by filing a Rule 56(f) Motion in order to pursue additional discovery.[1] While the Plaintiff's Rule 56(f) Motion was granted, the discovery deadline has passed, and the Plaintiffs have not submitted an opposition to the Motion for Summary Judgment.

FACTUAL BACKGROUND:

The following facts are garnered from the Defendants' unopposed Statement of Material Facts ("S.M.F.") and are supported by record citations unless otherwise noted.[2] The Complaint arises from an incident that the Plaintiffs allege took place at the Seale's home in Gorham on or around July 30, 2001. (S.M.F. ¶¶ 1, 5.) Johanna Seale hosted a sleepover for her friends Alyse Allen, Eliza Jenks and Joanna, at the Seale home.[3] (S.M.F. ¶ 5.) Johanna's parents Merrill[4] and

---

[1] Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

M.R. Civ. P. 56(f).

[2] As pointed out in the Plaintiff's Rule 56(f) Motion, the court notes that the depositions of the Defendants suggest that the Defendants (with the exception of Magnesense) signed their affidavits without personal knowledge regarding some of the information that they were swearing to. (See Joseph Seale Dep. 27:15-28:10, 32:25-35:18; Joseph Seale Aff. ¶ 4; Benjamin Seale Dep. 93:14-94:22; Benjamin Seale Aff. ¶ 4; Eliza Jenks Dep. 9:18-10:24, 11:17-11:19, 19:12-20; Eliza Jenks Aff. ¶ 4; Johanna Seale Dep. 12:10-13:5; 33:18-36:25; Johanna Seale Aff. ¶ 4; Merrill Seale Dep. 3:17-5:24; Merrill Seale Aff. ¶ 4; Alyse Allen Dep. 4:18-5:5; 6:6-6:13; 12:7-8; 25:5-29:23; Alyse Allen Aff. ¶ 4.) More specifically, the Defendants appear to have signed the affidavits stating that they ate certain foods with certain people, when many of the Defendants were unable to recall that level of detail at their depositions. (See Eliza Jenks Aff. ¶ 4; Eliza Jenks Dep. 9:18-10:13; 11:17-11:19; 19:12-20; Alyse Allen Aff. ¶ 4; Alyse Allen Dep. 4:18-5:5; 6:6-6:13; 12:7-8; 25:5-29:23; Benjamin Seale Aff. ¶ 4; Benjamin Seale Dep. 93:14-94:22; Johanna Seale Aff. ¶ 4; Johanna Seale Dep. 12:10-13:5; 33:18-36:25; Joseph Seale Aff. ¶ 4; Joseph Seale Dep. 27:15-28:10, 32:25-35:18; Merrill Seale Aff. ¶ 4; Merrill Seale Dep. 3:17-5:24.) The court notes that the discrepancies between the affidavits and depositions are troubling, since the Defendants' affidavits provide that the statements contained therein are based on personal knowledge. (See Eliza Jenks Aff.; Alyse Allen Aff.; Benjamin Seale Aff.; Johanna Seale Aff.; Joseph Seale Aff.; Merrill Seale Aff..) Each Defendant's misstatements in one portion of their affidavit call into question the veracity of the remainder of their affidavit.

[3] While the court notes that some of the documents refer to Alyse Allen as Alyse Wallace and Eliza Jenks as Eliza Lockhart-Jenks, for the purpose of consistency, the court will refer to Alyse Allen and Eliza Jenks.

2

Joseph Seale, as well as her brother Benjamin Seale, were also home during the night of the sleepover. (S.M.F. ¶ 1, 7.) (Pls.' Am. Compl. ¶ 10.) Johanna, Alyse, Eliza, and Joanna had just completed middle school together and were going to begin 9th grade at Gorham High School in the fall. (S.M.F. ¶ 6.)

At the sleepover, all of the parties purportedly ate pizza for dinner. (S.M.F. ¶ 7.) Joanna drank lime-aid with her dinner. (S.M.F. ¶ 8.) At some time after dinner, Joanna also ate part of a chocolate bar, which Alyse supposedly gave to her. (S.M.F. ¶ 13.) Later that evening, while Johanna, Alyse, Eliza, and Joanna were watching a movie, Joanna suggested that they have a dessert. (S.M.F. ¶ 9.) Johanna, Benjamin, Alyse, Eliza and Joanna all ate ice cream. (S.M.F. ¶ 10.) According to Joanna, the ice cream was "very melted on the bottom", "syrupy on the bottom", and it "'tasted a little weird'", but it was good enough to eat. (S.M.F. ¶ 11; Ex. A 42:7-18.) Some time after consuming the ice cream, Joanna developed a headache and decided to make herself tea. (S.M.F. ¶ 12.)

That night, Joanna was unable to make it to the bathroom in time, and she urinated on herself. (S.M.F. ¶ 14.) The following morning Joanna felt sick and she experienced nausea, dry heaves, and diarrhea. (S.M.F. ¶ 15.) Soon after she woke up, Joanna's mother and sister picked Joanna up from the sleepover and took her home. (*Id.*) About five days after the sleepover, Joanna began to lose her eyesight or her eyesight went blurry. (S.M.F. ¶ 16.) Since the sleepover, Joanna claims that she has experienced nausea, stomach pain, vision problems, and headaches. (S.M.F. 17.) While the nausea, stomach pain and headaches have abated; Joanna still has problems with her vision. (*Id.*) Although the following information is unsupported by record citations, the court notes that Plaintiffs have represented through their Rule 56(f) Motion that

---

[4] Certain documents in the record refer to Defendant Merrill Seale as A. Merrill Henderson or Ann Merrill Henderson. To avoid confusion, the court will continue to use the name Merrill Seale.

Joanna "is now legally blind, a paraplegic, and suffering from numerous neurologic problems . . . . (Pl.'s. 56(f) Mot. 1.)

While not explained in the Defendants' Statement of Material Facts, the court understands that the Plaintiffs' theory of the case rests on the premise that Joanna was poisoned with thallium the night of the sleepover, which has led to her medical problems.[5] (*See* Pl.'s. 56(f) Mot. 1-3.) Joanna stated that "after the poisoning" Benjamin, Johanna, Eliza and Alyse stopped talking to her.[6] (S.M.F. ¶ 20.)

Joanna testified, however, that she did not observe any Defendant attempting to poison her during the sleepover and she did not have any information "that would lead her to believe that any Defendant poisoned her that night." (S.M.F. ¶ 18.) The Defendants all state that they did not place a foreign or poisonous substance into Joanna's food, nor did they witness anyone else placing a foreign or poisonous substance into Joanna's food. (S.M.F. ¶ 22.) The Defendants assert that none of them have knowledge of anyone poisoning Joanna. (S.M.F. ¶ 22.)

Joseph and Merrill assert that they did not allow any of the children at the sleepover "to possess or control known toxic or poisonous substances . . . ." (S.M.F. ¶ 23.) They contend that they have never seen thallium, have never stored it in their home, and have no reason to think that thallium was in their home. (S.M.F. ¶ 24.) Benjamin and Johanna claim that they were unaware of any toxic or poisonous substances containing thallium being present in their home. (*Id.*) Defendant Magnesense, LLC claims it has never possessed or controlled anything that

---

[5] The Plaintiff also stated that Joanna testified that one of her doctors considered that she might have been poisoned by methanol. (S.M.F. 21.) The record citation contains hearsay, however, and is inadmissible. (*Id.*)

[6] The Statement of Material Facts includes Joanna's quote with brackets implying that Joanna was referring to Johanna, Alyse, and Eliza when she said "they had stopped talking to me . . . ." (S.M.F. ¶ 20.) The deposition transcript cited to, however, suggests that she was talking about Benjamin, Johanna, Alyse, and Eliza. (Ex. A. 69:3-8.)

4

contains thallium, and furthermore, that none of the children had access to Magnesense's materials on the night of the sleepover. (S.M.F. ¶ 25.)

PROCEDURAL HISTORY:

This case has been pending for over three years. As its history is complex and extended, the court is compelled to describe it in some detail. The original Complaint in this matter was filed on November 4, 2010 and named Benjamin, Johanna, Alyse, and Eliza as defendants. When the Complaint was filed, the Plaintiff at the time was Joanna, and she was pro se.

On February 3, 2011, Defendants Benjamin and Johanna answered the Plaintiff's Complaint and asked that the Plaintiff's Complaint be dismissed. Benjamin and Johanna are represented by Attorney Kenneth D. Pierce at Monaghan Leahy, LLP. On February 4, 2011, Defendant Alyse answered the Complaint and also asked that the Complaint be dismissed. Alyse was represented by Attorney Joy C. McNaughton at the Law Offices of Gerard O. Fournier.

The original discovery deadline for this case was October 10, 2011, but owing to repeated requests by both parties the deadline was eventually extended to July 16, 2013.

On July 14, 2011, the Town of Gorham filed its Motion to Quash Subpoena regarding a subpoena issued by counsel for Benjamin for the Town's file related to this incident. The Town's Motion was denied at hearing on September 2, 2011 and by order on September 8, 2011.

On July 18, 2011, the court issued an Order fining Plaintiff's counsel for failure to file ADR notification or report of ADR Conference.

Scott D. Giese entered his appearance as counsel for the Plaintiff on September 12, 2011.

Eliza filed her Answer to the Complaint on October 3, 2011. Eliza is also represented by Attorney Pierce at Monaghan Leahy, LLP.

A settlement conference was held on October 27, 2011.

5

On November 3, 2011, Attorney Giese moved to withdraw as counsel for the Plaintiff at Plaintiff's request. The court granted Giese's motion. Attorneys J. Michael Conley and Wenonah M. Wirick of Conley & Wirick, P.A. entered their appearances for the Plaintiff on November 7, 2011.

On January 5, 2012, Attorneys Conley and Wirick moved to withdraw as counsel for the Plaintiff at Plaintiff's request. The court granted their motion on January 31, 2012.

A pre-trial order was entered on January 27, 2012.

The Plaintiff filed an Amended Complaint[7] on February 1, 2012, which also named Joseph, Merrill and Magnesense, LLC as Defendants and added two additional counts to the Complaint.

Attorneys Anthony J. Sineni, III and Caleb J. Gannon of the Law Offices of Anthony J. Sineni, III, LLC entered their appearance for the Plaintiff on February 1, 2012.

The Seale defendants, as well as Eliza and Magnesense, LLC, filed an Answer to the Amended Complaint on March 29, 2012. The original Defendants also moved to strike Plaintiff's Amended Complaint on March 29, 2012.

On July 2, 2012, Attorneys Terrence D. Garmey and Gary Goldberg entered their appearance for the Plaintiff.

---

[7]The Amended Complaint contains four counts: Count I alleges that one or more Defendants acted negligently, recklessly or intentionally and placed a foreign substance in Joanna's food. Joanna consumed the food, and she argues that as a result she has suffered from severe medical problems. Count II of the Plaintiffs' Amended Complaint is against Joseph and Merrill and alleges that they were negligent because they breached their duty of reasonable care by failing to supervise the minor children at the sleepover and monitor or secure dangerous substances on their property. Count III of the Amended Complaint alleges that Magnesense, LLC acted negligently when it breached its duty of reasonable care to Joanna by failing to properly handle and safeguard toxic substances under its control, including thallium, thereby resulting in injury to the Plaintiff. Lastly, Count IV of the Amended Complaint alleges that if one or more of the Defendants acted intentionally, then that Defendant or those Defendants acted with malice or malice can be implied. The Plaintiffs are seeking compensatory damages on Counts I through III, and they are seeking punitive damages on Count IV.

On July 5, 2012, Gerard O. Fournier entered his appearance as co-counsel for Defendant Alyse. On September 14, 2012, however, Attorneys Fournier and McNaughton withdrew as counsel for Alyse. Attorney J. William Druary entered his appearance on behalf of Alyse on September 24, 2012.

On October 4, 2012, Attorney Kevin Libby of Monaghan Leahy, LLP entered his appearance for the Seale Defendants, Eliza, and Magnesense, LLC.

On October 15, 2012, Philip M. Coffin III, Esq. moved to quash the subpoena to produce records regarding *Zwolinski v. Rioux*. The court denied the motion on November 6, 2012.

The Defendants' filed their Motion for Summary Judgment on November 27, 2012. In response, the Plaintiff filed a Rule 56(f) Motion on December 14, 2012. By agreement of the parties, the Plaintiff was granted until January 15, 2013 to file its response to the Defendants' Motion for Summary Judgment. The Plaintiff's Rule 56(f) Motion was ultimately granted.

On December 11, 2012, the Plaintiff also filed a motion for an injunction to have an attorney for either party, or a neutral party, have access to and gain control of the pesticides in the Seale's garage. The parties ultimately reached an agreement on this issue.

On December 12, 2012, Henryka Zwolinski (Joanna's mother) and Ania Zwolinski (Joanna's sister) were named as co-guardians and co-conservators for Joanna Zwolinski. On February 26, 2013, the court granted the Plaintiff's Motion to Substitute Parties Due to Incompetence, and it ordered that Henryka and Ania be named as Plaintiffs in substitution for Joanna.

On April 9, 2013, this court granted the Motion to Withdraw as counsel for the Plaintiffs from Terry Garmey, Gary Goldberg, and Terry Garmey & Associates. At the same time, the

7

court stayed the proceedings for 60 days to give the Plaintiffs the opportunity to retain new counsel.

No new counsel has entered an appearance for the Plaintiffs, and the court has not received a response to the Defendants' Motion. Accordingly, the court must proceed to consider the merits of the Defendants' Motion.

STANDARD OF REVIEW:

Even though the Plaintiffs have not filed a response, the court must determine whether the Defendants are entitled to summary judgment. *See Cach, LLC v. Kulas*, 2011 ME 70, ¶ 9, 21 A.3d 1015 (quoting *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 5, 770 A.2d 653) ("'[A] party who moves for a summary judgment must properly put the motion and, most importantly, the material facts before the court, or the motion will not be granted, regardless of the adequacy, or inadequacy, of the nonmoving party's response.'"); *see also* M.R. Civ. P. 56(h)(4).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757 ("[I]f the evidence produced by the plaintiff in opposition to a motion for summary judgment would, if produced at trial, entitle the defendant to a judgment as a matter of law, the defendant is entitled to a summary judgment.")

"When, as here, a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶ 8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999

8

ME 196, ¶ 9, 742 A.2d 933. Rule 56 specifies that if an opposing party fails to respond in the manner specified in Rule 56, then "summary judgment, if appropriate, shall be entered against the adverse party." M.R. Civ. P. 56(e).

Under Rule 56, courts are constrained as to what they can consider. This court must admit uncontroverted facts from the statement of material facts that are properly supported. M.R. Civ. P. 56(h)(4). This court cannot consider parts of the record that were not referenced in a statement of material facts. *See* M.R. Civ.P. 56(h)(4) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."); *see also HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 17, 28 A.3d 1158.

DISCUSSION:

To survive the Motion for Summary Judgment, the Plaintiffs needed to make a prima facie showing that one of the Defendants negligently, intentionally, or recklessly poisoned Joanna and thereby caused her medical injuries. In this instance, the Plaintiffs have not opposed the Motion, and thereby the Plaintiffs have not made out a prima facie case regarding any elements.

The Defendants have argued, and this court agrees, that the Plaintiffs have failed to prove a breach of duty and causation. The court notes that the common threshold issue running through all four counts in this action is that the Plaintiffs needed to be able to demonstrate that one or more of the Defendants poisoned Joanna the night of the sleepover. The Plaintiffs have failed to do so.

9

*Breach of Duty:*

In a negligence action a plaintiff is required to demonstrate that a breach of duty occurred. *See Davis v. Dionne*, 2011 ME 90, ¶ 8, 26 A.3d 101. The Defendants argue that Plaintiffs have failed to present evidence showing that any one of the Defendants actually breached their duty to Joanna by poisoning her. (Defs.' Mot. 5). In *Durham v. HTH Corp.*, a slip and fall case in a restaurant, the Law Court found that testimony regarding a metal strip on the top stair being pulled or curled up after the accident, as well as evidence regarding two other patrons falling down the stairs, along with the restaurant owner's husband stating "'maybe' the metal strip could have caused Durham's accident", were insufficient to demonstrate a breach of duty on the part of the defendants. 2005 ME 53, ¶¶ 10-11, 870 A.2d 577. *See also Duchaine v. Fortin*, 159 Me. 313, 318, 192 A.2d 473, 476 (1963) (citations omitted) ("Liability cannot be predicated upon the mere happening of an accident. It does not necessarily imply negligence . . . . [T]o establish a case upon inferences drawn from facts, it must be from facts proven. Inferences based on mere conjecture or probabilities will not support a verdict.").

While Joanna has asserted that she became ill during the sleepover and her loss of vision began about five days after, there is no evidence before the court that demonstrates that any Defendant put a foreign substance in her food. (S.M.F. ¶¶ 14-16, 18-19, 22.) All of the Defendants have sworn that they did not introduce foreign or poisonous substances into Joanna's food, nor did they witness anyone else do so, and they have not become aware of anyone poisoning Joanna. (S.M.F. ¶ 22.) Even if the court were to exclude the Defendants' testimony based on questions regarding the credibility of their affidavits, Joanna's testimony adequately demonstrates that the Plaintiffs have not shown that any of the Defendants poisoned her. (S.M.F. ¶ 18; Ex. A 57:24-58:24.) Joanna testified in her deposition that she did not see any of the

10

Defendants do anything to poison her, nor did she have any information regarding any Defendant to suggest that he or she poisoned her. (*Id.*)

With respect to breach of duty, the Plaintiffs' case would appear to rely almost entirely on speculation or conjecture. Joanna's statement that the ice cream she consumed the night of the sleepover, "tasted a little weird", and that it was "very melted on the bottom" and "syrupy on the bottom", does not suggest that the ice cream was actually poisoned. (S.M.F. ¶ 11; Ex. A 42:7-18.) Nor does Joanna's assertion that Alyse, Johanna, Eliza and Benjamin stopped talking to her, show that any of them poisoned her. (S.M.F. ¶ 20.)

Without any support for the proposition that one or more of the Defendants may have poisoned her, the Plaintiff has failed to show a breach of duty. But failure to show a breach of duty is not the sole reason why the court must find in favor of the Defendants.

*Causation:*

A Plaintiff's case cannot be based on speculation or conjecture. *See Houde v. Millett*, 2001 ME 183, ¶¶11-12, 787 A.2d 757 (holding that testimony regarding soot being frequently tracked into the kitchen from the basement and soot being on the floor the night before the fall, as well as evidence of a dark smudge later discovered on a pajama leg, failed to show without speculation that soot caused the plaintiff to fall). "A defendant is entitled to a summary judgment if there is so little evidence tending to show that the defendant's acts or omissions were the proximate cause of the plaintiff's injuries that the jury would have to engage in conjecture or speculation in order to return a verdict for the plaintiff." *Houde*, 2001 ME 183, ¶ 11, 787 A.2d 757.

11

In order for a court to find that a defendant's actions or omissions proximately caused a plaintiff's injuries the court must determine whether the elements of substantiality and foreseeability have been met. *See Tolliver v. Dep't. of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223.

> "Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence."

*Id.* (quoting *Merriam v. Wanger,* 2000 ME 159, ¶ 8, 757 A.2d 778). When making a determination regarding proximate cause, fact-finders are permitted to make reasonable inferences from their own experiences, but the court has held that "in cases involving complex facts beyond the ken of the average juror, or those potentially involving multiple causes, more substantial evidence of proximate cause may be required." *Tolliver*, 2008 ME 83, ¶ 42, 948 A.2d 1223.

The Plaintiffs have not shown that any foreign substance that may have been placed into her food caused her medical problems. The only possible way that this court could find that a Defendant poisoned Joanna resulting in her injuries would be through speculation. The Defendants argue that even if the Plaintiffs were able to show that a Defendant or multiple Defendants intentionally or negligently placed a foreign substance in her food, the Plaintiffs still would not be able to establish causation between Joanna ingesting that food and her injuries. (Defs.' Mot. 5.) "'The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment.'" *Houde*, 2001 ME 183, ¶ 11, 787 A.2d 757 (quoting *Merriam v. Wanger,* 2000 ME 159, ¶ 8, 757 A.2d 778). Because the Plaintiffs failed to respond

to the Motion for Summary Judgment, the Plaintiffs failed to demonstrate to the court how a poison like thallium could cause the range of medical problems Joanna has suffered from and continues to suffer from.

Lastly, the court notes that Plaintiffs' fourth count regarding the Defendants acting intentionally and thereby with malice, whereby the Plaintiffs would be able to collect punitive damages, is not actually a separate legal claim. To the extent that the Plaintiffs are trying to establish an intentional tort, however, the Plaintiffs have not provided any evidence of intentional poisoning and that count must also fail.

Since the Plaintiffs have failed to demonstrate that any of the Defendants negligently or intentionally poisoned Joanna, all four of the Plaintiffs' counts must fail. The court acknowledges that Joanna suffers from devastating health problems and sympathizes with her condition, but Plaintiffs have failed to demonstrate how any of the Defendants acted in any way to cause Joanna's injuries.

Accordingly, the court **ORDERS** that the Defendants' Motion for Summary Judgment is GRANTED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _November 8, 2013_

Hon. Roland A. Cole
Justice, Superior Court

13